Ruffin, C. J.
 

 The indictment is founded on the Act of 1S40, ch. 30, which makes it a misdemeanor in “any free negro, mulatto, or free person of color,” to carry about his person or keep in his house any shot gun or other arms, specified, “unless he obtain a license from the County Court.” The only question at the trial was, whether the defendant was such a person as came within the description in the Act. The Court is not prepared to say, whether the evidence given by the State on that point be competent or not. The question is not one of pedigree in the ordinary acceptation of the term, as the
 
 *386
 
 descent of the defendant from Joseph Dempsey was admitted on both sides, and the dispute was simply upon the fact, whether Joseph Dempsey was, as contended by one side, a negro, or a mulatto, that is, one begot between a white and a black, as contended by the other side. We are not aware, that hearsay from a stranger has been received as to a point of fact of that nature, and we are not disposed to say, it ought tobe admitted, without further consideration. The Court does not, however, mean to intimate an opinion, that it is inadmissible ; for, in our country, so little attention is paid to the registry of hirths and deaths and pedigree generally, as to make it extremely difficult, and in some cases impossible, to prove the blood of a person even for four generations in any other way. Necessity may therefore, perhaps, compel the admission of such evidence. The Court, however, is not called on to give to the point further consideration in this case, because we hold, that the defendant was properly convicted upon his own showing ; which, therefore, rendered the first point immaterial, and in that way prevented an error on it from being prejudicial to the defendant, and a ground for reversing the judgment, as has been frequently ruled. For, if a party will not rely on an exception by itself, which he takes, but will go on and prove the case for the other side, and put the whole in his bill of exceptions, he must abide the consequences. It would be preposterous to disturb a conviction, which was proper, and must have been rendered independent of the alleged error, and upon the party’s own proofs or admissions.
 

 That the defendant was guilty, according to his own evidence and the construction placed on it by himself, we hold upon the same ground which his Honor took on the trial — namely: that the defendant was descended within the fourth degree from a negro ancestor, and so is within the Act. The evidence on the part of the defendant
 
 *387
 
 did not carry the white blood of Joseph Dempsey farther back than his mother; and, admitting, it to be mixed, it is a fair inference against the defendant, who is most likely to be cognizant of the truth and able to prove it, that Joseph Dempsey derived no white blood through his father. Indeed, the defendant contended for nothing of the kind on the trial, but prayed an instruction, which yielded in terms, that Joseph’s father was a negro, and, consequently, that he must have been half and half, or a mulatto, properly speaking. That being so, and the great grand-father being, thus, in the first degree from a negro, the defendant is necessarily in the fourth degree ; and that brings him within the Act, although the mother of each generation was a white woman. It is true, that the defendant is not a negro, who is a black person, entirely of the African race. Nor is he a mulatto, according to the proper original signification of the term, which has just been explained. And the Court could hardly undertake of itself to construe the expression “person of color,” so as to bring one within the statutes, creating felonies, or otherwise highly penal, merely because he derived from some remote ancestor a tinge of color that was not white ; and the judiciary could not be regulated by degrees in such cases, without some legislative authority. There is, however, abundant authority of that kind, which relieves the Court from all difficulty in this respect, by distinctly defining, who are mulattoes in our law or persons of color, as the subjects of our disabling or penal statutes. Thus in the Act of 1777, the evidence of “mulattoes or persons of mixed blood,” namely, those “descended from negro ancestors, to the fourth generation inclusive,” is made incompetent except against negroes, Indians, Mulattoes, or such persons of mixed blood. In a great number of States, “free negroes” and “mulattoes,” and “persons of mixed blood,” or “persons of color,” are subjected to disabilities or punishment. They are to be found in the
 
 *388
 
 Revised Statutes under several heads, but mostly under that of “slaves and persons of colorand in the 74th section of that Act, taken from that of 1826, it is enacted, that “all free mulattoes, descended from negro ancestors to the fourth generation inclusive, though one ancestor of each generation may have been a white person, shall come within the provisions of the Act.” The Constitution, likewise, in the third section of the first article of the amendment, describes in the same manner the free mulattoes or free persons of mixed blood, who are not admitted to vote for representatives in the legislature. It is thus very clear, that the term “free person of color” in the Act of 1840, and in that of 1823, making it a capital felony for a person of color to make an assault with intent to commit a rape on a white woman, and in other penal statutes, is to be understood in our law, at this day, to mean a person descended from a negro within the fourth degree inclusive, though an ancestor in each intervening generation was white. Therefore this conviction and sentence ought to stand.
 

 PbR Curiam. Ordered to be certified accordingly.